RHOME MILLING CO. v. GLASGOW.
(No. 8525.)

(Court of Civil Appeals of Texas. Ft. Worth. March 17, 1917. Rehearing Denied April 21, 1917.)

1. MASTER AND SERVANT ⬳278(5) — INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

In a gin servant's action for injuries caused by blow on head from a pulley detached from its fastenings by tightening of belt which caught and wound around line shaft on floor below, alleged to have been caused by negligent use of wooden wedge to tighten pulley on line shaft, evidence *held* to show negligence in use of such wedge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 961.]

2. MASTER AND SERVANT ⬳276(4) — INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a jury finding that defendant's negligence was the proximate cause of plaintiff's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

3. MASTER AND SERVANT ⬳276(4) — INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a jury finding that the wedge or key caused the belt to wind and catch on the line shaft, and that it would not have so caught but for the presence of the wedge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

4. TRIAL ⬳260(8)—ACTION FOR INJURIES — SPECIAL ISSUES.

A given instruction as to the meaning of negligence as used in the special issue "that it was the duty of defendant to exercise ordinary care to keep its belts, pulleys, and line shaft in a reasonably safe condition, so as to avoid injury to plaintiff, and if it failed of such duty, such failure would be 'negligence,' and if you believe from a preponderance of the evidence that it failed of such duty you will answer issue No. 3 in the affirmative, and if you do not so believe from the evidence you will answer said issue in the negative," was as comprehensive as a refused requested instruction, "You are instructed that, in considering and answering issue No. 3 given you in the main charge, the term 'negligence,' as there used, means the doing of something that a person of ordinary care would not have done under the same or similar circumstances or the failure to do something that a person of ordinary care would have done under the same or similar circumstances," and hence the refusal was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 657.]

5. APPEAL AND ERROR ⬳230—PRESERVATION OF GROUND OF REVIEW — OBJECTIONS — ISSUES.

Under direct provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, an objection to submitted special issue not urged at the trial, but urged for first time in motion for new trial was waived.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 681.]

6. APPEAL AND ERROR ⬳1062(1) — REVIEW—HARMLESS ERROR—ISSUES.

As the only finding on the special issue as to defendant's negligence was that it was negligence to permit the wedge to be in the position it was, that portion of the submitted special issue relating to the duty of the defendant concerning the condition of the belts and pulleys was rendered abstract, and was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

7. MASTER AND SERVANT ⬳276(1) — INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a jury finding that it was not one of plaintiff's duties to see that the machinery was kept in a proper state of repair.

[Ed. Note.—For other cases. see Master and Servant, Cent. Dig. §§ 950, 954.]

8. MASTER AND SERVANT ⬳280—INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a jury finding that the catching of the belt on the line shaft was not an ordinary incident of such a gin which was known to plaintiff and the risk of which was assumed by him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981, 986.]

9. TRIAL ⬳351(5)—ISSUES—SUBMISSION—REQUESTS.

The special issue submitting the defense of contributory negligence being a fair presentation of the question, there was no error in refusing the further issue requested by the defendant upon the same defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834.]

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by J. W. Glasgow against the Rhome Milling Company. Judgment for plaintiff, and defendant appeals. Affirmed.

R. E. Carswell and L. D. Ratliff, both of Decatur, for appellant. McMurray & Gettys, of Decatur, and H. E. Lobdell, of Bridgeport, for appellee.

DUNKLIN, J. J. W. Glasgow, while employed as a laborer in the gin of the Rhome Milling Company, sustained personal injuries, and instituted this suit to recover damages therefor. A trial before a jury resulted in a verdict and judgment in plaintiff's favor for the sum of $1,500, from which the Rhome Milling Company has prosecuted this appeal.

On the lower floor of the gin was a line shaft. A belt around a pulley upon this line shaft extended to the upper floor and around a pulley at the end of another shaft which turned the condenser situated on the second floor. The power for the operation of the gin was applied to the line shaft on the lower floor. While plaintiff was attending to the operation of the condenser it became choked with cotton, and this caused the belt to be thrown from the condenser pulley, and as the belt dropped it also ran off the lower line shaft pulley and onto the lower line shaft itself. Plaintiff then unchoked the condenser and replaced the belt upon the condenser pulley. When he did this the belt became so wrapped on the line shaft below as to become taut and to jerk from its fastenings the condenser pulley, and as that pulley fell it struck the plaintiff upon the head and injured him.

In his petition he alleged that the pulley on the lower line shaft was improperly adjusted, in that it fitted too loosely, and that in order to tighten it a key or wedge of wood had been driven in between the line shaft and the pulley, and that one end of such wedge had been allowed to extend for several inches along the line shaft, and that on the occasion of the accident the belt caught on the protruding end of that wedge, and thereby became so entangled as to cause the belt to jerk from its fastenings the condenser pulley as a result of which plaintiff was injured. It was alleged that the act of the defendant in leaving the end of the wedge protruding, as it was, along the line shaft in such a manner that the belt when it slipped off the line shaft pulley would come in contact therewith and catch thereon was negligence, which was the proximate cause of plaintiff's injuries.

The evidence shows that the wedge driven under the pulley on the line shaft was put in by Kaker, the defendant's manager, and the jury found that the defendant was guilty of negligence in permitting the same to be in that condition at the time of the accident, and that such negligence was the proximate cause of plaintiff's injuries.

Appellant insists that the evidence was insufficient to support the jury's finding of negligence, or the finding that such negligence was the proximate cause of plaintiff's injuries, or the finding that the wedge or key caused the belt to wind and catch on the line shaft, and that it would not have so caught but for the presence of the wedge. The evidence shows without contradiction that immediately after the accident the belt was found wound tightly around the lower line shaft, layer upon layer, until it formed almost a perfect disk which covered the wedge, that the belt was three inches in width, and that the wedge protruded three or four inches beyond the outer edge of the pulley on the line shaft. The evidence further shows, that the slipping of the belt from the condenser pulley would happen whenever the condenser became choked, that but for such slipping the cogs of the condenser would be broken, and that the machinery was so designed as to allow the belt to be so thrown whenever the condenser became choked, in order to save such injury to the machinery. Appellant has cited the testimony of several witnesses tending strongly to show that the entangling of the belt on the lower line shaft was not caused by catching upon the wedge driven under the pulley, but that the accident resulted from the lapping or folding of the belt after slipping from the two pulleys in such manner as to cause it to wind tightly around the lower shaft. The evidence cited by appellant tends strongly to show further that, if the belt did catch upon the wedge used to tighten the pulley on the line shaft, no person of ordinary prudence could have foreseen such a result. But, according to other testimony, the line shaft had a smooth surface; that during a long period of the operation of the gin prior to the placing of the wedge under the line shaft pulley the belt had never wound around the line shaft before the accident, although the slipping of the belt from both of the pulleys was a common occurrence. Furthermore, the witness Black testified that he examined the belt immediately after the accident and found it wound so tightly that he had to prize it off with a plank, and, when he did so, he found a scar on the belt which showed "that it had been hung on the wooden key." He further testified as follows:

"I noticed the wooden key then. The key caught the belt after it slipped off the pulley and caused a tightening of the belt which resulted in throwing the condenser pulley, boxing and bolts through the wood. The belt was wrapped around the line shaft and on top of the wooden key doubled over the wooden key. * * * The wooden pin was about a quarter of an inch thick, and was of hard wood, and I don't know how much of it was hidden under the pulley, but there was about three or four inches of it sticking out and protruding along the line shaft. I unwound the belt from the line shaft. * * * There was about four or five feet of the belt

wrapped around the shaft. The belt was scarred, and I think had to be replaced on account of the lacing being stretched."

[1-3] The testimony of Black, in connection with the facts related above, was the only proof offered by the plaintiff to show that the belt did catch upon the wooden pin and thereby cause the accident, and while there was other testimony tending to discredit him, it was within the province of the jury to accept his testimony as true. In view of such proof all assignments presenting the contentions above stated are overruled.

Following is issue No. 3 submitted by the court to the jury:

"Was it negligence on the part of defendant to permit said wooden key to be and remain in the position it was in on the occasion in question? Answer 'Yes' or 'No.' In this connection I instruct you that it was the duty of defendant to exercise ordinary care to keep its belts, pulleys, and line shaft in a reasonably safe condition, so as to avoid injury to plaintiff, and if it failed of such duty, such failure would be 'negligence,' and if you believe from a preponderance of the evidence that it failed of such duty you will answer issue No. 3 in the affirmative, and if you do not so believe from the evidence you will answer said issue in the negative."

Appellant assigns error to the refusal of the following requested instruction:

"You are instructed that, in considering and answering issue No. 3 given you in the main charge, the term 'negligence,' as there used, means the doing of something that a person of ordinary care would not have done under the same or similar circumstances or the failure to do something that a person of ordinary care would have done under the same or similar circumstances."

[4] The criticism presented as a basis for this assignment is as follows:

"The court nowhere in its charge defines negligence or instructs the jury what is meant by ordinary care."

We are of the opinion that the explanation of what was meant by the term "negligence," as used in the issue submitted by the court, was as comprehensive as that given in the requested issue, with the added advantage of its specific application to the facts of the case.

Appellant complains further of issue No. 3 submitted by the court upon the ground that, as the negligence charged in plaintiff's petition was the act of maintaining the wedge between the pulley and the line shaft, there was no basis for the submission of any issue of negligence with respect to the condition of the belts and pulleys.

[5] That objection was not urged upon the trial of the cause, but is urged for the first time in appellant's motion for a new trial; hence it was waived under and by virtue of the terms of article 1971, Vernon's Sayles' Texas Civil Statutes. See G., T. & W. Ry. Co. v. Dickey, 187 S. W. 184.

[6] Besides, the only finding of the jury to that issue was that it was negligence on the part of the defendant to permit the wedge to be and remain in the position it was in on the occasion of the accident, and the remainder of the instruction in connection with that issue was in the nature of an abstract statement of the legal duty of the defendant with respect to such an appliance.

[7] It is insisted, in effect, that the evidence shows conclusively that it was one of plaintiff's duties under his employment to see that the gin plant and all of its machinery was kept in proper condition of repair, and that the finding of the jury in the negative upon that issue was without evidence to warrant it. There was testimony, direct and specific, that Kaker, the defendant's superintendent, inserted the wedge between the pulley and the line shaft after the beginning of the ginning season, and that plaintiff knew nothing of it until after the accident happened; that at the time of the accident he was employed in operating the condenser and was not then engaged in looking after the repairs of the machinery, although he had been employed to assist Kaker, the superintendent, in such repairs before the beginning of the ginning season of that year.

[8] It is contended further that the evidence conclusively showed that the catching of the belt on the line shaft is an ordinary incident of the operation of such a gin, which was known to plaintiff, and the risk of which was assumed by him, contrary to the finding of the jury in the negative upon that issue. This assignment must be overruled, for, as stated already, there was testimony supporting the finding that the belt caught on the wedge, that it would not have caught but for the presence of the wedge, and that it was negligence to place and maintain the wedge therein, and there was no evidence tending to show that it was usual and customary to tighten the pulley on the line shaft in that manner.

[9] The issue presented by the court submitting the defense of contributory negligence on the part of the plaintiff was a fair presentation of the question, and hence there was no error in refusing the further issue requested by the defendant upon the same defense.

Furthermore, we are unable to concur in appellant's contentions that the findings of the jury upon the controlling issues in the case were so contrary to the overwhelming preponderance of the evidence as to show bias or prejudice on the part of the jury against the defendant, and thereby require a reversal of the judgment.

All assignments of error are overruled, and the judgment is affirmed.