## PELIPCHYK v. BORDEN. (No. 7855.)

(Court of Civil Appeals of Texas. Galveston. Feb. 12, 1920.)

Master and servant ☞286(41)—Negligence in directing inexperienced boy to work at cotton gin without instructions held for the jury.

In an action for injuries to a 17 year old farm employé from contact with revolving shaft of cotton gin which he had never seen before the day of the accident, whether employer was negligent in directing him to pick up cotton from the floor around the machine while it was in operation, without instructing him as to the danger, held a question for the jury.

Appeal from District Court, Wharton County; Sam'l J. Styles, Judge.

Action by Konstanti Pelipchyk against A. P. Borden. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Prichett Harvey and Charles Murphy, both of Houston, for appellant.

Proctor, Vanderberge, Crain & Mitchell, of Victoria, and G. G. Kelley and W. L. Hall, both of Wharton, for appellee.

GRAVES, J. Konstanti Pelipchyk, a Russian boy 17 years old at the time, had his arm torn off from coming in contact with a rapidly revolving steel gin shaft, and brought this suit against his employer, A. P. Borden, the owner and operator of the machinery, to recover damages therefor; after the evidence for both parties was in, the court, over the plaintiff's protest, instructed a verdict against him, and he appeals from a judgment entered pursuant to the jury's compliance with the direction.

The contention here is that the case-made below was one for the jury, and we think the position well taken. This is thought to be a sufficient summary of the most material testimony presented:

The boy was ignorant and inexperienced, never having gone to school but three months in his life; could neither read nor write; and understood very little, if any, of the English language. He was working for his employer in the capacity of a farm hand to till the soil and do common labor; had never before been around a gin or inside of the machinery room where he was injured; nor had he ever before seen such machinery as that by which he was hurt; nor did he know what kind it was. On the day of the accident he was at work in a nearby seedhouse tearing up the floor, when his employer's agents gave him a shovel and some cotton seed sacks, and directed him to go down into the ground floor or machinery room of the ginhouse and clean it up. While this room was a large one, 36 feet square, with a number of windows, doors, and a stairway in it, the day was cloudy and rainy and it was dark in there. Most of the gin machinery was up stairs, but in this downstairs room there was a seed blowpipe, two other pipes carrying seed down into it from above, and the gin shaft which caused the injury. This shaft was a round, smooth steel rod $2^3/_{16}$ inches in diameter; rested in brackets fastened about 3 feet from the floor upon a row of 6x8 inch posts, which stood 6 feet apart, there being 5 of them and all being connected

together by a 6x6 inch sill running along the floor. The shaft itself ran parallel with the north wall of the building, 8 feet distant therefrom; was operated by pulleys and belts; and was turning around at the rate of about 210 revolutions to the minute.

Although the boy's immaturity and inexperience were known to the appellee's agents in charge, no one told him the place he was ordered to do the cleaning up work in was a dangerous one, no warning of any sort being given him, nor any direction as to how he was to do the work; and his injury followed quickly upon his entering the room, that is, in about 30 minutes. He himself testified as to the immediate happening of the accident, in part, as follows:

"When I went up stairs the engineer gave me a shovel and some cotton seed sacks and said for me to go down in the machinery room and work, and I went down. Yes, sir; he gave me a shovel and told me to go down stairs. There was another man working down stairs when I went down. No, sir; I had never been in the ginhouse before that day; that was the first time I was ever in there; I had never been around a gin before that day. No, sir; Mr. Frank Borden didn't tell me that gin was a dangerous place. Mr. A. P. Borden didn't tell me that it was a dangerous place. Roman did not tell me it was a dangerous place. The engineer did not tell me it was a dangerous place. Nobody told me it was a dangerous place to work; they never told me nothing. When I went down stairs I cleaned up the old floor; there was lots of cotton seed and everything on the floor. Well, they have got all kinds of machinery downstairs; I don't know what kind of machinery; I know it was big machinery; I never seen any before. Yes, sir; there were shafts and pulleys down there. That shaft was about this long; about as long as this railing here. That shaft was turning around; it was turning around so fast you couldn't see it; you couldn't tell it was turning, it was running so fast; it was dark down in that room. When I first went down stairs I went to work; I went to work cleaning up the room; picking up all the cotton. I put the cotton in a big sack, a great big sack. Yes; I was hurt that day; I lost my arm in that cotton gin that day. I was working down there just before I lost my arm; I had that sack in my hand, and was putting cotton seed in that sack; scraping the cotton seed into the sack. I got down this way (indicating) and scooped the cotton from the floor; I picked up a big bunch of cotton, and after I picked up the cotton the machine was to me and grabbed me; the shaft grabbed that sack; this thing that was turning around. No, sir; I don't know how it grabbed the sack; it just grabbed it and rolled it into the machine there, and it pulled off my arm and it threw me about five feet this way (indicating).

"I never seen the machinery before then. I didn't know nothing about whether it was dangerous and that I would get caught and injured there. No, sir; that was the first time in my life that I ever seen machinery like that. I had been down in the gin room there about 30 minutes before I got hurt. You know I can't tell the time—I ain't got no watch there. It was just about 30 or 20 minutes; something like that. No, sir; I didn't know how to do any work except to work on the farm as a common laborer at that time. The boss would come and show me how to work. No, sir; I had never worked close to machinery at all up to that time; I had been working always on another kind of a job; well, I plow with the horse and work in the rice; that is all the kind of work I had been doing."

Such being the main outlines of the proof offered, under allegations laying a proper predicate for it, among them that the place he was ordered for the first time to do unaccustomed and unfamiliar work in was unsafe and dangerous, the hazard of which he not only neither knew nor was told about, but on account of his youth and inexperience was himself in no position to understand and appreciate, we think a clear issue of fact arose as to whether or not appellee was guilty of negligence proximately causing appellant's injuries. It is true there was sharp controversy between the parties over many features of the situation, as already stated, but that was for the jury to settle; the case as made for the plaintiff under the testimony given did not constitute an instance of injury to one knowing and appreciating, or being of such capacity and so circumstanced as to be presumed to know and appreciate, such an open and obvious danger as relieved his employer of any duty of warning him about it at all, but, we think, came well within the rule thus stated by the Commission of Appeals in Hotel Dieu v. Armendarez, 210 S. W. at page 520:

"It is the duty of the master to warn and instruct a minor servant as to the dangers incident to the service which are known to the master or which could be known by the exercise of reasonable care, and which the servant, because of immature judgment and want of experience, cannot reasonably be expected to know and appreciate. If the servant has sufficient capacity to appreciate the danger, or has acquired the knowledge otherwise than by instruction from the master and is as fully aware of the dangers as if instructed and advised, the master is not negligent in failing to give such warning and instruction, and under such conditions the servant assumes the risk incident to the employment. The mere fact, however, that the servant knows that the employment is dangerous, is not sufficient to relieve the master of further instruction. The duty of the master is to inform the servant, not only that the work is dangerous, but also as to the extent of the danger and the means of avoiding it. If the master fails to perform this duty, it ordinarily is a question of fact for the jury to determine whether the servant has acquired sufficient knowledge of the dangers to exempt the master from liability in case of injury. Railway Co. v. Brick, 83 Tex. 598, 20 S. W. 511; Royer v. Tinkler, 16 Pa. Super. Ct. 457."

The judgment is accordingly reversed, and the cause remanded.

Reversed and remanded.