## BORDEN v. PELIPCHYK. (No. 8210.)*

(Court of Civil Appeals of Texas. Galveston. June 17, 1922. Dissenting Opinion June 23, 1922. Rehearing Denied Oct. 5, 1922.)

**1. Appeal and error ⬌218(2)—Objection to form of answer, directed to be returned to special issue, must be made at trial.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 2061, objection of vagueness and uncertainty to form of answer directed to be returned to special issue, to be available on appeal, must have been made at the trial.

**2. Trial ⬌351(5) — Ultimate fact issue held clearly and fairly submitted by special issue.**

In view of the pleadings and evidence in a servant's injury case, the special issue, as framed and submitted by the court, "Was plaintiff * * * ordered or required by defendant A. or his vice principal, F., to enter, remain in, and perform work * * * in the gin of A. * * * on * * * the date he is alleged to have been injured?" *held* to clearly and fairly present the real and ultimate fact issue, which defendant asked to have submitted in form, "Did F. order plaintiff to leave the seed house in which plaintiff was working and go over to the gin?"

**3. Trial ⬌350(2)—Special issues on evidentiary details not required.**

Special issues on mere evidentiary details need not be submitted, but only the ultimate controlling fact issues.

**4. Trial ⬌352(1)—Mode of presentment of special issues discretionary.**

Within the limit that special issues of the ultimate and controlling fact issues be submitted in a fair manner, the mode of presentment is in the discretion of the trial court.

**5. Appeal and error ⬌1062(1)—Any error in form of special issue held harmless.**

Any error in form of special issue whether defendant or his vice principal, F., gave plaintiff a certain order following the form into which the pleadings had cast the matter, instead of confining the issue to whether F. gave the order, was harmless; defendant's liability being the same whether he or his vice principal gave the order.

**6. Trial ⬌350(6)—Special issues as to precise manner of accident held unnecessary.**

The master being liable to his servant if he, being inexperienced, lacking appreciation of the danger and being unwarned, was put to work in a gin around and adjacent to dangerous machinery, and in the course of his service in that regard was caught and injured, submission of special issues beyond those substantial and material facts, as to the precise manner in which the accident occurred, was unnecessary.

Pleasants, C. J., dissenting.

Appeal from District Court, Wharton County; M. S. Munson, Judge.

Action by Konstanti Pelipchyk against A. P. Borden. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 220 S. W. 383.

Kelley & Hawes, of Wharton, Proctor, Vandenberge, Crain & Mitchell, of Victoria, and W. L. Hall, of Wharton, for appellant.

J. H. H. Dennis, of Wharton, and P. Harvey and Murphy & Perry, all of Houston, for appellee.

GRAVES, J. The following concededly correct statement of the nature and result of this suit is taken from appellant's brief:

"Appellee, Konstanti Pelipchyk, a Russian immigrant, sued appellant, A. P. Borden, in

the district court of Wharton county, Tex., November 14, 1914, for personal injuries sustained by appellee in a gin of appellant on October 23, 1913. The case was submitted to the jury upon special issues, and judgment was rendered against appellant for $7,500, from which judgment appellant has taken an appeal, with supersedeas bond.

"The following is a concise statement of the case:

"Appellee was in the employ of appellant as a general farm laborer on the latter's plantation, consisting of about 2,600 acres of land, in Wharton county, Tex., which plantation was managed by appellant's brother and vice principal, Frank Borden. Appellee was 17 years old, and wholly inexperienced in any character of work, save farm and ordinary labor. In the early afternoon of the day of the accident, appellee had been ordered by Frank Borden to go, with two other men, named Carela and Pardi, respectively, and take up the floor of a cotton seed house or room. At appellant's gin there were a downstairs and upstairs gin room, each 20x26 feet, the upstairs room containing the gin stands and presses, and the lower room the operating machinery.

"To the east and north of these two gin rooms were shed annexes, one an east shed, 16x36 feet, being the engine room, only separated from the gin rooms by a line of open studding, and the other, a north shed, 44x32 feet, which was constituted of a 24-foot passageway, and across the passageway this seed house or room, 20x32 feet. The roofs of these east and north sheds, respectively, joined the east and north walls of the gin rooms about 12 feet above the upstairs floor line, and there was a door and window in the downstairs gin room, and a window upstairs, all opening on the passageway, as did the only door of the seed room. Appellee was injured by being caught in the revolving shaft, in the downstairs gin room, and his right arm was jerked off near the shoulder.

"There were two main fact issues in this case:

"First. Whether, while appellee was at work with the two other man in the seed room, at the unfinished task of taking up the floor, Frank Borden came to the gin, and, at the request of the engineer, Erofay, ordered appellee to leave the seed house and go over to the gin.

"Second. Whether appellee, at the time he was injured, was actually working, and while at this work, if any, of cleaning up the downstairs gin room, and while stooping down near the shaft and scooping up cotton seed from the floor into a sack, appellee was caught by the revolving gin shaft, or whether appellee, at the time he was injured, was not at work at all, but, when caught, was merely pranking or fooling with the gin shaft.

"On the first issue appellee testified that, while he was working, taking up the floor in the seed house, Frank Borden and a Russian, named Roman, came on horseback to the gin, and the gin engineer, one Erofay, asked Frank Borden to let him have another man at the gin, and that Frank Borden then ordered him, appellee, to leave the seed house and go over to the gin; that Erofay wanted him. And appellee further testified that when he went over to the gin Erofay put him at work, in the doing of which work he was, in a very short time, injured.

"Frank Borden denied that he was present at the gin at any time that day until after appellee was injured, and denied giving any order that afternoon to appellee for any character of work except the original task of taking up the seed house floor.

"The men at the gin that day were an engineer, one Erofay, and a pressman, Leven or Lewko, who were upstairs, a man named Eli, who was somewhere downstairs, and appellee, Konstanti, and the two men in the seed house, Carela and Pardi. Appellee was the sole witness in his own behalf. Erofay, the engineer, did not testify in the case, nor did Roman. These men left the United States for Russia in March, 1914. Pardi died in appellant's employ in July, 1916, prior to the trial of this case upon the facts. Lewko, the pressman, and Carela, testified by deposition for the appellant. The man called Eli disappeared about Christmas, 1913, and was not a witness in the case, although two statements of his, one testified to by the witness Carela, and the other by the witness Lewko, were in evidence as res gestæ.

"Appellee testified, on the second issue, as to how he was injured, that he was stooping down near the shaft with his right side to the shaft, and the sack on his right arm and his face turned away from the shaft, scooping up cotton seed off the floor with his hands, putting same in the sack, the sack was caught by the shaft, and he was jerked into the shaft, and his right arm torn off. Appellee stated Eli was at work in the downstairs gin room when he, appellee, first went into the room, but that Eli had left the room prior to the accident, Carela testified that Eli said shortly after the accident that he did not see the accident, but that he had told appellee several times not to lay his hands on the shaft. Lewko testified that Eli said he had told appellee several times not to lay sacks on the shaft. That he (Eli) did not see the accident, because, as Eli said, he had turned around to pick up his shovel when appellee was caught by the shaft. Carela further testified that after appellee was injured he walked with him, holding his hand, from the gin over to appellee's house, and on the way over appellee said he was fooling with the shaft, and said nothing about a sack. Appellee testified that he was unconscious from the time he was injured. Appellee's right arm was torn off near the shoulder.

"The gin shaft which caught appellee was a smooth shaft, with no set screws therein, except one at the extreme east end of the shaft. This shaft was about 2¼ inches in diameter, was about 18 feet long, and was situate east and west, and ran in brackets, extending about four inches from posts, and was driven by belts and pulleys operated by a 40 horse power gasoline engine. The shaft was 35½ inches above the floor, and turned from north to south, at 210 revolutions per minute. This downstairs gin room, including the east shed or engine room separated from the gin room proper by a line of open studding, was 36 feet square. It had two doors, each 2 feet by 7. One of these doors was in the north wall of the shed annex, about 8 feet from the east corner, and the other in the south wall of the shed, about same distance from the south corner. There were two windows in the engine room shed, one in the north and one in the south wall, and three windows in the room proper, in all seven

openings in the 36-foot room. The windows were each 2 feet 6 by 5 feet 6, four light windows. Also the line of open studding, between the downstairs gin room proper and the shed engine room, extended 12 feet above the upstairs floor, and the space was boarded up only 4 feet from the floor, and this arrangement let the light down from above, and the upstairs gin room itself had six openings, four windows and two doors. The roll of sack and clothing was fastened around the shaft, and so remained for many months after the injury. From where this roll was to the nearest pulley was 6 feet to the pulley on the west and 5 feet 6 inches to the pulley on the east. The roll was about 18 inches long. From the point of contact, indicated by the roll, about midway of the shaft, it was 9 feet to a window in the north wall and about twice that distance to the door in the north wall. The engine was in the south corner of the shed room. There was a large separator, or V-shaped pipe, north of the shaft, and the belt and pulleys above the shaft. Appellee said he was stooping down close to the shaft. His position was north of the shaft, and his detached arm fell on the same side. The accident occurred some time between 3 and 4 o'clock in the afternoon of October 23, 1913."

After defining negligence and proximate cause the court submitted and the jury answered special issues to this effect:

"Special issue No. 1: Was the plaintiff, Konstanti Pelipchyk, on October 23, 1913, under the age of 21 years, and uninformed in any other work than that of common labor on a farm? Answer: He was.

"Special issue No. 2: Were the youth and inexperience of the plaintiff, Konstanti Pelipchyk, in any other work than that of common labor on a farm, known to the defendant, A. P. Borden, or his vice principal, Frank Borden, or by the exercise of ordinary care could it have been known to them, or either of them? Answer: Yes.

"Special issue No. 3: Was the plaintiff, Konstanti Pelipchyk, ordered or required by the defendant, A. P. Borden or his vice principal, Frank Borden, to enter, remain in, and perform work and services in the gin of A. P. Borden, at Mackay, Tex., on October 23, 1913, the date he is alleged to have been injured? Answer: He was.

"Special issue No. 4: If you have answered the special issue No. 3 that, 'He was,' then was said act on the part of the defendant or his vice principal, Frank Borden, 'negligence' as that term has been defined? Answer: It was.

"Special issue No. 5: If you have answered the above special issue No. 4, that it was negligence, then was said act a proximate cause of the injury to plaintiff? Answer: It was.

"Special issue No. 6: Did the defendant A. P. Borden, or his vice principal, Frank Borden, warn and advise the plaintiff, Konstanti Pelipchyk, of the dangers of said cotton gin, and the shaft, pulleys, belts, and other machinery therein? Answer: They did not.

"Special issue No. 7: If you have answered special issue No. 6, 'They did not,' then was the failure to warn and advise the plaintiff 'negligence' on the part of defendant? In this connection you are instructed that it was the duty of the defendant, or Frank Borden, if they ordered or required plaintiff to engage in dangerous work, to warn and advise the plaintiff of the dangers incident to the employment, and the extent of said dangers and how to avoid same, if you find that the plaintiff was at that time a youth of immature judgment and inexperienced in the work he was called upon to do. Answer: It was.

"Special issue No. 8: If you have answered special issue No. 7 that, 'It was negligence,' then was said negligence a proximate cause of the injury to the plaintiff, Konstanti Pelipchyk? Answer: It was.

"Special issue No. 9: Did the man Eli, who was working downstairs, tell plaintiff, just prior to the latter's injury, not to put his hand on the shaft, and was such caution sufficient to apprise plaintiff of the danger of coming in contact with such shaft? Answer: Eli did not so tell the plaintiff not to put his hand on the shaft.

"Special issue No. 10: Did the man called Eli, who was working downstairs, tell plaintiff just before the latter's injury, not to lay sacks on the shaft, and was this warning sufficient to apprise plaintiff of the danger of being caught by the gin shaft, while handling a sack near the shaft? Answer: Eli did not tell plaintiff not to lay sacks on the shaft.

"Special issue No. 11: Was the danger of being caught by the revolving shaft an open, visible danger, apparent to plaintiff, or was it a danger not open and visible, and not apparent to plaintiff? Answer: It was not an open, visible danger apparent to plaintiff.

"Special issue No. 12: Was the danger to plaintiff of said gin shafts, pulleys, belts, and other machinery therein, known to defendant, A. P. Borden, or his vice principal, Frank Borden, or by the exercise of care could have been known to them, or either of them? Answer: Yes.

"Special issue No. 13: Was the cotton gin of the defendant, A. P. Borden, at Mackay, Tex., as constructed and operated by him on October 23, 1913, an unsafe and dangerous place for the plaintiff, Konstanti Pelipchyk, to enter and perform work and services therein? In this connection you will take into consideration the age of the plaintiff and his inexperience at that time, as you find from the evidence. Answer: It was.

"Special issue No. 14: If you have answered the foregoing special issue No. 13, 'It was,' then was allowing such machinery to remain in that condition negligence on the part of the defendant? Answer: Yes.

"Special issue No. 15: If you have answered the foregoing special issue No. 14, 'Yes,' then was the same a proximate cause of the injury to the plaintiff? Answer: Yes.

"Special issue No. 16: Could the defendant have boxed or guarded the shaft, pulleys, flywheels, belts, and other machinery in such manner as to have removed the danger to plaintiff? Answer: Yes.

"Special issue No. 17: If you have answered 'Yes' to the foregoing special issue No. 16, then you will answer this: Was the failure to do so negligence on the part of defendant? Answer: Yes.

"Special issue No. 18: If you have answered the foregoing special issue No. 17 'Yes,' then was such negligence a proximate cause of the injury to the plaintiff? Answer: Yes.

"Special issue No. 19: At the time plaintiff was injured was he exercising such care for his own safety as you deem a person of ordinary prudence of like age, discretion, and intelligence as the plaintiff would exercise in like situation as the plaintiff? Answer: Yes; he was."

[1] Through his first four assignments of error appellant very ably contends that the court erred in submitting, over his objection, special issue No. 3, as hereinbefore copied, that the jury's finding of "he was" in response thereto was too vague and uncertain as a basis for any judgment against him, and that his requested issue No. 4, which had been previously presented and refused, should have been submitted, its form being this:

"Did Frank Borden order the plaintiff to leave the seed house in which plaintiff was working, and go over to the gin?     Answer 'Yes' or 'No.'"

This contention cannot be upheld. The jury were directed to return as the form of their answer to question No. 3 as submitted, "He was, or he was not, as you find the fact to be." It was not objected to by appellant in the court below at the time of the trial on the ground now specified in some of these assignments, that is, that it was vague, ambiguous, and confusing in not distinguishing between work in the seed room and work in the gin, so those particular objections are not really available upon appeal. Articles 1971 and 2061, Vernon's Sayles' Statutes; Milling Co. v. Glascow (Tex. Civ. App.) 194 S. W. 686; Jones v. Railway Co. (Tex. Civ. App.) 193 S. W. 373.

[2] If that omission were overlooked, however, still, under the pleadings and evidence, we are of opinion that the inquiry as framed by the court:

"Was the plaintiff, Konstanti Pelipchyk, ordered or required by the defendant, A. P. Borden, or his vice principal, Frank Borden, to enter, remain in, and perform work and services in the gin of A. P. Borden, at Mackay, Tex., on October 23, 1913, the date he is alleged to have been injured?"

—clearly and fairly presented the real and ultimate fact issue touching the matter, and that the refusal to descend into such evidentiary particulars as appellant's requested issue No. 4, and other similar ones presented with it, did not constitute prejudicial error.

The plaintiff below plainly and unequivocally averred that he was ordered or required by the defendant, his agent or foreman in charge, to enter and perform work in the gin proper and about the exposed machinery thereof, the pertinent paragraphs of his petition being these:

"That on or about October 23, 1913, plaintiff, then a minor about 17 years of age, Russian by birth, and unable to understand the English language, was in the employ of defendant as a farm hand, and was required to till the soil, and to do other common labor about said farm, and on or about said date plaintiff was for the first time ordered, required, or permitted by defendant, his agents or foreman in charge and with authority, to enter, remain in, and perform work and services in said gin and about said exposed shafts, flywheels, pulleys, belts, and other machinery then being operated as aforesaid, and which was then and there an unsafe and dangerous place for plaintiff to work, plaintiff not knowing and being unable to understand and appreciate said danger, plaintiff never having worked in said gin, and being ignorant of the construction and operation of said machinery, and not being warned and advised by defendant, his agent or foreman in charge, of the danger of said machinery or place, and when defendant employed plaintiff he knew of his minority and inexperience, and failed to explain to plaintiff the character of the work he would be called upon to perform, and to warn him of the dangers attending its operation, all of which was known to the defendant, or by the exercise of ordinary care could have been known to him, and while plaintiff was performing the work and services in said gin, as was required of him by the defendant, and while he was therein for a very short time, a sack, being held by plaintiff in some manner or other, unknown to plaintiff, was caught and became entangled with a swiftly moving and revolving shaft, pulley, flywheel, belt, or other machinery, and plaintiff was jerked with such force and violence that his arm was torn and pulled off at his shoulder.

"That the direct and proximate cause of the injury to plaintiff as aforesaid was the act or omission of the defendant, or his agent, in ordering, requiring, or permitting plaintiff to enter, remain in, and perform work and services in said gin, the same being then and there an unsafe and dangerous place for plaintiff to enter, remain in, and perform work and services, and which was known to defendant, or by the exercise of ordinary care could have been known to defendant; plaintiff being then and there young and inexperienced in any other work than that of common labor on a farm, which was known to defendant, or by the exercise of ordinary care could have been known to him; the failure of defendant to warn and advise plaintiff of the danger of said gin, the shafts, pulleys, belts, and other machinery therein, and which was known to defendant, or by the exercise of ordinary care could have been known; in having, maintaining, and operating said gin and place in an unsafe and dangerous condition, by having said machinery exposed with set screws and other obstacles projecting, it being a common practice, and with little expense, and well known to defendant, or by the exercise of ordinary care could have been known to defendant, the manner and method of making same safe by boxing, guards, and other approved ways; the failure of defendant to instruct his servants and agents to prevent plaintiff entering said gin, remaining therein, and performing services and work therein, and the failure of defendant to instruct his agents and servants to keep plaintiff therefrom, and not to order him therein and to keep him therefrom."

Likewise, the defendant in his pleading, just as understandingly, met the precise is-

sue thus tendered by special answer as follows:

"That during the year 1913 plaintiff was in employ of defendant as a common or farm laborer only, and plaintiff was of ample years and discretion to be fully capable of discharging such character of labor. That defendant had never employed plaintiff, and had never authorized the employment of plaintiff in said cotton gin, and plaintiff's duties in no wise required him to enter said gin or have anything to do with machinery or appliance therein. That no agent or employee of this defendant had, at any time, during the year 1913, or at any other time, any authority, right, or permission from this defendant whatsoever to put plaintiff to work in said gin or to use plaintiff for any other purpose whatsoever save as common laborer. That the defendant had sufficient men in his employ, competent and charged with the duty of running said gin, and there was no reason, or necessity, whatsoever, for said plaintiff to have anything to do with the running of said gin, or to do work therein. That plaintiff's accident and injury was solely due to his own negligence, which was the sole proximate cause of his injury, or if not the sole cause of his injury, plaintiff's negligence so directly contributed to his injury that he cannot recover herein, and in further support of this plea, defendant says:

"This defendant repeats that neither Frank Borden nor any other person had any authority whatsoever, or the right from this defendant, to put plaintiff to work in the gin room in which he was injured, and if any person so did this defendant says that same was without any authority on the part of this defendant. This defendant says that the only person, other than the defendant himself, authorized to either hire or discharge plaintiff or other persons in this defendant's employ was Frank Borden.

"That on or about 1 o'clock in the afternoon of the day in question, this plaintiff and two other persons, all three being in defendant's employ, were sent by Frank Borden, the vice principal of this defendant in charge of said plantation, at Pierce, to a certain cotton seed house near defendant's gin, and separated therefrom by a covered wagonway. That the said plaintiff and said two other employés were instructed and directed by the said Frank Borden to do certain specific work in said seed house, to wit, to tear up and move a temporary floor in said seed house. That the plaintiff was not instructed by the said Frank Borden to do any other work whatsoever on said afternoon, and especially was not instructed to clean up or oil machinery at said gin, or to do any work whatsoever in said gin house; that at the time plaintiff was injured the work of tearing up said floor in said seed house had not been finished. That the plaintiff voluntarily left his said work at the seed house, and entered the cotton gin of defendant without defendant's knowledge or consent. That the plaintiff had no business or duty whatsoever calling upon him to go in said gin house, or to do any work around the machinery or any work of cleaning up around the gin. That without any direction whatsoever from the defendant, or from Frank Borden, and without the knowledge or consent of the defendant or Frank Borden, plaintiff placed himself in close proximity to said revolving shaft, and attempted with a sack to grasp said shaft, and was thrown against the shaft, and his clothing caught and his arm pinched off. Defendant says that to the best of his knowledge and belief plaintiff was not doing any work whatsoever around said gin, or in said gin house, but was merely idling therein, and not performing the work in the seed house; but defendant says that, if it is true that the plaintiff, at the time he was hurt, was attempting to work around said gin in cleaning up, oiling machinery, or any other work in said gin house, defendant says that same was wholly without the direction, consent, or knowledge of defendant, or Frank Borden, neither of whom were present when plaintiff entered said gin, or was injured.

"Defendant says, further, that there was no person at said gin who held any such position as foreman of the gin; that there were only three persons who were working in said gin in defendant's employment, and these persons were an engineer, who was upstairs in defendant's gin, and a pressman, likewise upstairs, and there was another employee, who was engaged downstairs in sweeping up the floor of said gin. That there was very little cleaning-up work to do, and the one employé who had been put at said task was ample, and there was no reason or necessity whatsoever for giving him any aid or assistance. That none of said three men in said gin had any power or authority whatsoever to employ any other person or to discharge any person, or to assign duties to any other person in said gin, especially none of said three employés of said gin had any right, power, or authority derived from defendant or Frank Borden to put plaintiff, or any other person, to the work or employment of cleaning up said gin, oiling machinery in said gin, or working around said machinery. This defendant says that plaintiff entered said gin wholly without invitation from any one, but that if any person invited plaintiff into said gin, and instructed him to go to work therein, the action of said person was wholly unauthorized by this defendant. * * *

"That defendant owed plaintiff no duty to warn him because plaintiff had no right to be in said gin, and defendant had no reason whatsoever to expect that plaintiff would enter said gin and attempt to do anything therein. That furthermore the specific work at which plaintiff had been put by Frank Borden, to wit, the tearing up of the floor of the seed house, was not finished, and again defendant had no right to expect plaintiff to abandon said task and enter said gin."

[3, 4] There was thus mutually clear distinguishment by the parties between the seed house and the gin. That fact becomes all the more clear and plain when the evidence is looked to. The appellee, with no uncertain sound, testified directly to an order given him by Frank Borden, the admitted vice principal of appellant, directing him to leave the seed house, where both litigants say he had first been put to work, and go over to the gin and work there under the direction of Erofay, the engineer, who, as appellee further swore, had called upon Frank Borden for another man to work in the gin. Mr. Frank Borden flatly denied having given any such order, swearing that he had not been at the

seed house at all that afternoon. So, undoubtedly, we think, under the pleadings quoted and this evidence, the question of whether or not appellee had been ordered or directed by appellant, or his vice principal, to enter, remain in, and perform work and services in the gin as contradistinguished from the seed house, became not only a sharply controverted issue, but the sole and controlling one on this feature of the case. That the court's question No. 3 properly submitted it seems to us too plain for argument. There had been no dispute about the first order, that is, to work at the seed house taking up the flooring; both litigants affirmed it. The matter before the jury was therefore reduced to whether or not the second order to leave there and go to the gin to work had been given. That simple inquiry was left in the easily understandable language of issue No. 3 to the jury's arbitrament. They, on direct testimony both ways from the opposing litigants, resolved it, and this court is without authority to disturb their finding. The trial court is not called upon to submit mere evidentiary details, but only in a fair manner the ultimate and controlling fact issues; the mode of presentment within that limit being discretionary. Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. 541. It may be that the manner of statement or the verbiage used in this instance could as well, or even better, have been otherwise stated, but that would furnish no reason for holding it improper.

[5] Neither, in our opinion, is there merit in the further claim that material error resulted from not confining the inquiry concerning the order or requirement on the part of the defendant, or his vice principal, to Frank Borden; this misled nobody, as it merely followed the form into which the pleadings had cast the matter. If error at all, however, it was clearly harmless, since the liability of appellant would have been the same whether he or his vice principal gave the order.

Under assignments 5, 6, and 7, complaint is made of the court's refusal, on request, to submit successively detailed inquiries as follows:

"(1) On the afternoon of the injury to plaintiff, did Frank Borden go to the gin before the plaintiff was hurt, or did he not go to the gin until after the plaintiff was hurt?

"(2) Was Frank Borden personally present at the gin when plaintiff, Pelipchyk, left the seed house and went over to the gin?

"(3) When plaintiff left the seed house and went over to the gin, did he go of his own accord, or did he go upon request or direction of any other person or persons?"

These constitute but an elongation of the theory embodied in appellant's preceding issue No. 4, and, like it, clearly went to mere evidentiary details in the whole body of the evidence, and did not comprehend the ultimate fact issue upon which the liability or the freedom from it would depend. Consequently, the refusal of them was not error.

It is next said the court erred in submitting, over protests duly reserved, previously copied special issues Nos. 6 and 7. The idea underlying these objections is that the queries were irrelevant because no proper issue submitting the question of appellee's authority to work in the gin by requirement of appellant had first been presented. This premise having been hereinbefore determined adversely to the assumed basis for these complaints, they fall with it.

[6] Refusals of special issues Nos. 5 and 12, as requested by appellant are made the grounds of his tenth and eleventh assignments of error. These tendered inquiries were designed to elicit findings on the minute details of whether appellee, at the time he was caught in the revolving shaft and injured, was actually engaged in cleaning up the floor near the shaft, was stooping down under the shaft with his face turned away from it, and holding a sack on his right arm, into which he was gathering and putting cotton seed from the floor, or was he simply fooling around the shaft? We do not think appellee's right of recovery depended upon its being determined that he was in the exact position and engaged in the very act, to the minutest detail, as testified to by him. To have required findings upon all these minor matters would have merely amounted to a cross-examination of the jury for the purpose of obtaining their views on each item of the evidence relating thereto. If the appellee, in his inexperience, lack of appreciation of the danger of it, and unwarned, was put to work in this gin around and adjacent to dangerous machinery, and in the course of his service in that regard was caught therein and injured, liability of his employer would result from proof of those substantial and material facts without the necessity of further establishing the precise manner in which the accident came about. Railway Co. v. Stuart (Tex. Civ. App.) 178 S. W. 17; Terminal Co. v. Barger (Tex. Civ. App.) 176 S. W. 870; Railway Co. v. Hapgood (Tex. Civ. App.) 184 S. W. 1075.

The remaining assignments have been carefully considered, but are not thought to be meritorious; what has been said disposes of the merits of the appeal; no real attack is made upon the sufficiency of the evidence to support the jury's verdict upon any of the findings returned, and, in our view, they justify the recovery awarded. The cause has been twice before appealed. Pelipchyk v. Borden (Tex. Civ. App.) 220 S. W. 383, and Id., 207 S. W. 177.

Finding no reversible error, the judgment has been affirmed, with the Chief Justice dissenting.

Affirmed; Chief Justice PLEASANTS dissenting.

PLEASANTS, C. J.  I cannot agree with the majority of the court in the disposition made by them of this appeal. On the case made by the pleadings and evidence appellant's liability depended upon whether Frank Borden ordered or directed the appellee to leave the seed house or room, where he had been previously put to work by Frank Borden, and go over to the gin, and appellant had the statutory right to have this issue "distinctly and separately" submitted to the jury (article 1984a, Vernon's Sayles' Civil Statutes), and I think the record clearly shows that he was denied this right by the trial court. Upon the state of the evidence as reflected by the record, and from the vague, indefinite, and confusing manner in which the issue was submitted in the charge of the court, the refusal of the court to submit the issue as requested by the appellant was such a denial of the rights of appellant as was calculated to cause, and which probably did cause, the rendition of an improper verdict.

The record discloses that the seed house, or room, the engine and boiler room, and the rooms in which the cotton gin and the pulleys and shafting connected therewith were operated, were physically attached to each other, and together constituted one plant or establishment known and designated as the gin, or cotton gin. Appellee testified that he went down to "the cotton gin" that evening in obedience to an order from Frank Borden to go to the gin and assist in taking up the floor of the seed house. The fact that this order was given by Frank Borden was undisputed.

The vital, clear-cut issue in the case was whether Frank Borden went to the gin after the appellee had been working for some time in the seed house and ordered him to leave the seed house, and, as appellee testified, "told me to go inside the gin for the purpose of going down in the engineer's room and help the engineer work." Appellee repeatedly testified that Frank Borden gave this order. He says:

"Frank Borden sent me to the seed house, and sent me from the seed house over to the gin."

Frank Borden testified positively that he did not order the appellee to leave the seed house, and did not give him instructions to do any work that evening other than to assist in removing the floor of the seed house, and that he was not at the gin at any time that day until after the appellee was injured. There was no other evidence upon this issue.

Such being the state of the evidence, the appellant, in my opinion, had the clear statutory right to have the issue of whether Frank Borden ordered the appellee to leave the seed house and go over to the gin "distinctly and separately" submitted to the

jury, and I do not think the form of the question propounded to the jury submits the issue in this way.

As shown by the pleadings of the defendant copied in the opinion of the majority, the distinction between the seed house and gin or gin room was emphasized in the defendant's answer, and this distinction was the basis of defendant's plea of nonliability. The seed house was a safe place in which to work, and the gin room might be a dangerous place to one uninformed and inexperienced in working near operating machinery. This fact made it important to appellant's defense that this distinction should be recognized in submitting the issue to the jury. Special issue No. 3, submitted by the court, is as follows:

"Was the plaintiff, Konstanti Pelipchyk, ordered or required by defendant, A. P. Borden, or his vice principal, Frank Borden, to enter, remain in, and perform work and service in the gin of A. P. Borden, at Mackay, Tex., on October 23, 1913, the day he is alleged to have been injured?  Answer: 'He was' or 'He was not,' as you find the fact to be."

It is perfectly clear to me that this question does not necessarily involve the issue of whether Frank Borden ordered the appellee to leave the seed house and go over or into the gin. We must depend entirely on inference and presumption to determine from the jury's affirmative answer to this question that they intended to find that Frank Borden ordered appellee to leave the seed house and go into the gin. It may be that in the absence of any objection by appellant to the form of the question, or any request to make the question more definite, it could be held that the issue was submitted, but the record shows that the appellant did object to the question upon the ground that it did not definitely submit the vital issue in the case. One of the objections to the question urged in the trial court before the charge was submitted, was as follows:

"The basic fact issue in this case is the clean-cut one whether or not Frank Borden, admittedly defendant's vice principal, ordered the plaintiff, Pelipchyk, to leave the seed house where he was working, taking up flooring, and go over to the gin and work under the engineer. The plaintiff testified directly to such action and order on the part of Frank Borden, and he is the sole witness in his own behalf, while the defendant, Frank Borden, denies, not only that he gave such order, but denies that he was even present at the gin at the time plaintiff entered the same.

"Special issue No. 3, as now objected to, is the only issue upon any phase of the case as to what induced plaintiff or was the procuring cause of plaintiff's action in entering the gin. The issue upon this phase of the case should be presented, not only in the light of the allegations of the petition, but in the light of the evidence in the case, and the sole issue of this phase of the case being whether or not

Frank Borden gave such order, the issue should have been so confined.

"The objection to. the submission of this special issue No. 3 as drafted is emphasized by the action of the court in refusing special issue No. 2, requested by defendant, as to whether or not Frank Borden was present at the gin at the time plaintiff left the seed house and went to the gin, and special issue No. 3, requested by defendant, as to whether or not Frank Borden ordered plaintiff to leave the seed house and go over to the gin and work."

The record shows that appellant made every effort to have the issue properly submitted, and I think the main purpose of the statute, giving a party to a suit the right to have the question of fact raised on the trial submitted in the form of special issues, will be defeated if the opinion of the majority in this case be upheld. Graves v. Campbell, 74 Tex. 576, 12 S. W. 238.

Such being my conclusion, I am constrained to dissent from the holding of the majority that the judgment of the trial court should be affirmed. I think the judgment should be reversed for the reason indicated, and the cause remanded for a new trial.